{¶ 32} I respectfully dissent from the majority opinion. The majority concludes the officers lacked the requisite reasonable, articulable suspicion to conduct a Terry type investigatory stop of appellant. The majority further hold that the search of appellant's black satchel was not permissible regardless of the propriety of the stop.
 {¶ 33} The majority correctly points out that the information supplied by the confidential informant comprises the potential basis to support the stop. Appellant had no criminal history indicative of drug activity and the informant had no history with the officers to serve as a gauge of the accuracy of his information.
 {¶ 34} The confidential informant furnished the investigating officers with certain, specific information prior to the events which led to this case. The police were informed that appellant had supplied cocaine to the informant for several months. The informant accurately picked out appellant's picture from a booking photo, verifying the identity of the suspect. The informant notified the police that on April 7, 2004, appellant would be meeting with the informant in a specific Toledo strip mall parking lot for purposes of supplying cocaine. The informant notified the police that appellant "might" be driving a white Bonneville. The informant notified the police that this drug transaction would occur specifically between the hours of 5:30 p.m. and 6:00 p.m.
 {¶ 35} On April 7, 2004, the specific date, at precisely 5:45 p.m., the specific time, appellant, the specific person, drove into the specific parking lot, all in conformity with the information provided by the informant. Appellant parked in the immediate proximity of the informant. The police witnessed these events, verifying much of the information furnished by informant. Several other portions of the information did not transpire in exact conformity with the informant's information.
 {¶ 36} The vehicle driven by appellant was not the type the informant said he "might" be driving. Appellant had his girlfriend and sons with him in the car, which was not mentioned by the informant. The police did not observe appellant exchange drugs with the informant prior to initiating their investigatory stop.
 {¶ 37} Despite several gaps in information, the specific person, date, time, and location were all witnessed and confirmed as accurate by the officers prior to the stop. Had appellant not entered the parking lot precisely in the middle of the timeframe furnished by the informant and parked right next to informant, I might view the circumstances with more suspicion. However, in point of fact, appellant arrived at precisely 5:45 p.m. on April 7, 2004, pulled into the exact strip mall parking lot predicted by informant, and parked next to the informant. That is sufficient evidence of the accuracy of the informant's information to comprise the requisite reasonable articulable suspicion and allow the stop.
 {¶ 38} The lack of a police history dealing with this informant, the suspect's lack of a drug conviction history, the presence of his children, the use of a different vehicle, and the failure of the police to witness an actual drug transaction may weigh against, but do not defeat, reasonable articulable suspicion.
 {¶ 39} The bulk of the specific details furnished by the informant were proven accurate by the observations of the undercover officers. The judgment of the trial court, which the majority acknowledges we must defer to, was supported by competent credible evidence. The underlying facts and circumstances show the officers proceeded upon more than a mere "hunch" and possessed "reasonable articulable suspicion." I would find the stop was proper.
 {¶ 40} Finally, I must address the enforceability of the police search of the black satchel observed inside appellant's vehicle after the stop. The majority concludes the search of the black satchel is unlawful under any circumstances because it was located outside of the reach of anyone inside the vehicle when it was searched. I respectfully disagree.
 {¶ 41} Appellant was a suspected drug dealer. Because the police possessed reasonable articulable suspicion to conduct the stop, the officers simultaneously possessed the ability to conduct a protective search to ensure their immediate safety, as permitted by the Supreme Court of Ohio in Bobo.
 {¶ 42} The majority reasons that because the black satchel was removed from inside the vehicle and placed on top of the vehicle, it could no longer be searched as it was beyond the reach of the occupants of the vehicle.
 {¶ 43} I find no case law that suggests an officer compromises his ability to conduct a protective search of a bag of a suspected cocaine dealer simply by removing it to a zone of safety. On the contrary, that is the entire point of allowingBobo searches, to verify and secure there are no items which could compromise officer safety during the stop. I find no controlling law or precedent which requires the officer to search the satchel prior to removing it from the vehicle.
 {¶ 44} While there are competing factors on the issue of whether reasonable, articulable suspicion existed, I find that the balance of the factors weigh in favor of the existence of reasonable articulable suspicion. I believe the stop was proper. The search of the satchel was a constitutionally permissible protective search. The officer had the legal basis to search the satchel as soon as he spotted it inside the vehicle in proximity to the suspect. The placement of the satchel on the outer roof of the vehicle did not negate the possibility of dangerous items in the satchel. It did not negate the officer's authority to conduct a protective search. I respectfully dissent.